## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MONTANANS FOR MULTIPLE USE, et al.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) |
| | ) |
| **BARBOULETOS, et al.,** | )   Civil No.  03-1244 (TFH) |
| | ) |
| **Defendants,** | ) |
| | ) |
| and | ) |
| | ) |
| **SWAN VIEW COALITION, et al.,** | ) |
| | ) |
| **Defendant-Intervenors.** | ) |

### MEMORANDUM OPINION

Pending before the Court is defendants' Motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c).  Upon careful review of the motion, plaintiffs' opposition, and the replies thereto, the Court will grant defendants' motion.

### I.  PROCEDURAL BACKGROUND

Plaintiffs, Montanans for Multiple Use, et al. ("plaintiffs") are fourteen individuals and entities – both private and governmental.[1]  Named defendants include Cathy Barbouletos, Forest

---

[1] Plaintiffs include:  Montanans for Multiple Use; Northwest Montana Gold Prospectors Association; Montanans for Property Rights; Capital Trail Vehicle Riders Association; Flathead Snowmobile Association; North American Wolf Watch; Flathead Business and Industry Association; Leland's Honda and Suzuki, Inc.; Owens & Hurst Lumber Co; The Hon. Jerry O'Neil, Montana State Senate; The Hon. George Everett, Montana House of Representatives; Flathead County, MT; Sanders County, MT; and, Leland J. Moore.

Supervisor for the Flathead National Forest; Brad Powell, Regional Forester for the Northern Region of the United States Forest Service ("USFS"); Michael Dale Bosworth, Chief of the USFS; the USFS; Ann M. Veneman, United States Secretary of Agriculture; the Department of Agriculture; and Does 1-50, alleged to be employees or agents of the United States or the USFS ("defendants").

Plaintiffs filed a Complaint on June 10, 2003, alleging defendants: (1) failed to take actions mandated by the National Forest Management Act ("NFMA") and failed to fulfill the procedural requirements demanded by the NFMA; (2) failed to take actions and unreasonably delayed actions in violation of the Administrative Procedures Act ("APA"); (3) improperly closed certain roads in violation of the Federal Land Policy Management Act ("FLPMA"); and, (4) failed to submit the proposed management plan to each House of Congress in violation of the Small Business Regulatory Enforcement Fairness Act ("SBREFA").  On August 8, 2003, the Swan View Coalition, the Wildlife Center for Preventing Roads, the Montana Chapter of the Sierra Club, and Defenders of Wildlife ("defendant-intervenors") intervened pursuant to Fed. R. Civ. P. 24(a)(2).  Defendants timely filed a Fed. R. Civ. P. 12(c) motion for judgment on the pleadings on November 1, 2004, and seek dismissal of the Complaint in its entirety based on a failure to state a claim and lack of subject matter jurisdiction [Docket No. 31].

## II.  STATUTORY BACKGROUND

1.  <u>National Forest Management Act 16 U.S.C. § 1600, et seq.</u>

Enacted in 1976, the NFMA compelled the Forest Service to develop a Forest Management Plan by September 30, 1985.  16 U.S.C. § 1604(c).  Accordingly, the Forest Service adopted and issued its Record and Decision for a Forest Management Plan for Flathead National

Forest on January 22, 1986.  Compl. ¶ 41.  Forest Plans shall be revised "from time to time when the Secretary finds conditions in a unit have significantly changed, but no later than every fifteen years, and in accordance with [public involvement comparable to the development of the initial Management Plan]."  16 U.S.C. § 1604(f)(5)(A)-(B).  The NFMA permits the Forest Service to amend the Forest Plan "in any manner whatsoever after final adoption [of the Management Plan]," but "if such amendment would result in a significant change in such plan, [the amendment must be adopted] in accordance with the provisions [governing revision of the Management Plan]."  16 U.S.C. § 1604(f)(4).

2.     <u>The Multiple-Use Sustained-Yield Act ("MUSYA")  16 U.S.C. §§ 528-531.</u>

The Organic Administration Act of 1897, 16 U.S.C. § 551, conferred on the Forest Service the authority to "make provisions for the protection against destruction by fire and depredations upon the public forests and national forests" and to "make such rules and regulations and establish such service as will insure the objects of [the national forests], namely, to regulate their occupancy and use and to preserve forests thereon from destruction."  *Id*.  The MUSYA clarifies the regulatory authority and makes clear that the Forest Service is to manage national forests for "multiple uses" and "sustained yield," in the combination of uses that "best meet[s] the needs of the American people; making the most judicious use of the land for some or all of these resources or related services over areas large enough to provide sufficient latitude for periodic adjustments in use to conform to changing needs and conditions."  16 U.S.C. § 531(a).

3.      The Small Business Regulatory Enforcement Fairness Act 5 U.S.C. 801.

The SBREFA, enacted on March 29, 1996, requires federal agencies to submit a report to both Houses of Congress and to the Government Accounting Office ("GAO") before a rule becomes effective.  5 U.S.C. § 801(a)(1)(A).  A major rule may not become effective until 60 days after it is submitted to Congress or published in the Federal Register, whichever is later.  5 U.S.C. § 801(a)(3)(A).  Section 805 provides that "[n]o determination, finding, action or omission under this chapter shall be subject to judicial review."

4.      R.S. 2477 (43 U.S.C. § 932)

The Mining Law of 1866 provided: "the right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted."  Act of July 26, 1866, ch. 262, § 8, 14 Stat. 251, codified at R.S. 2477, recodified at 43 U.S.C. § 932.  The Federal Land Policy Management Act ("FLPMA") repealed R.S. 2477 on October 21, 1976, but expressly preserved any valid, then existing rights of way.  FLPMA § 701(a), 43 U.S.C. § 1701.

5.      Administrative Procedures Act ("APA") 5 U.S.C. §§ 551-559, 701-706.

Agency actions may be judicially reviewed under the APA and set aside if they are arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.  5 U.S.C. § 706(2)(A).  Judicial review of agency action may be reviewed only where: (a) the agency has taken final action; or (b) in limited circumstances, where the agency failed to act and such action was both statutorily mandated and non-discretionary.  *See Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 61-64 (2004).

### III.  FACTUAL BACKGROUND

The Flathead National Forest occupies roughly 2.3 million acres in northwest Montana. The Forest Service adopted a Forest Plan for the management of the Flathead in 1986 and has since amended it approximately 23 times.[2]  In addition, despite the statutory command to revise the Forest Plan at least every fifteen years, the defendants have not yet completed a revision.[3] Defendants' alleged failure to comport with certain statutory proscriptions related to the amendment and revision process forms the basis of Claims One and Two of plaintiffs' Complaint.  Claim Three is based on certain road closures allegedly undertaken without proper authority.  Finally, plaintiffs allege defendants failed to submit management plans and related matters to Congress.  Such failures form the basis of Claim Four.

### IV.  STANDARD OF REVIEW

A 12(c) motion is appropriately granted when at the close of the proceedings "no material issue of fact remains to be solved, and [the movant] is clearly entitled to judgment as a matter of law." *In re United Mine Workers of America Employee Benefit Plans Litigation*, 854 F.Supp. 914, 915 (D.D.C. 1994) (quoting *Haynesworth v. Miller,* 820 F.2d 1245, 1249 (D.D.C. 1987)). When considering a 12(c) motion to dismiss for lack of subject matter jurisdiction, the Court must accept the facts as alleged by the non-movant and all reasonable inferences drawn therefrom as true.  *Peters v. National R.R. Passenger Corp.*, 966 F.2d 1483, 1485 (D.C. Cir.

---

[2]The parties' dispute the total number of amendments, but plaintiffs' Complaint alleges defendants adopted 23. Compl. ¶ 41.

[3]When defendants filed their motion in 2004, they predicted the revision would be completed in the spring of 2006.  To date, though, it appears the Forest Plan still has not been revised.

1992) (citing *Jablonski v. Pan American World Airways, Inc.*, 863 F.2d 289, 290-91 (3d Cir.1988)).  Where the movant bases the motion on a failure to state a claim upon which relief can be granted, the Court may dismiss based on dispositive issues of law.  *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

## V.  DISCUSSION

### A.  Claim One: Violation of the National Forest Management Act ("NFMA")

Plaintiffs allege defendants violated NFMA by: (1) evading the Forest Plan amendment and revision processes by making "substantial changes" to the Flatheaded National Forest Plan without proper procedure; (2) improperly adopting a *de facto* revision of the Forest Plan through a piecemeal amendment process; (3) failing to undertake the fifteen year revision of the Forest Plan as required by statute; and, (4) improperly closing certain roads when such roads "are required to ensure that adequate protection and care of the Forest can proceed."  Compl. ¶ 50.

After the Forest Service adopts a Forest Plan, it may alter the Plan by amendment, significant amendment, or complete revision.  The procedural requisites demanded by the NFMA turn on which type of alteration vehicle the Forest Service utilizes.  If the alteration is merely an amendment, the Forest Service may adopt the amendment "in any manner whatsoever after final adoption after public notice."  16 U.S.C. § 1604(f)(4).  Whereas, if the Forest Service undertakes either a complete plan revision, or an amendment that results in a "significant change," it must undergo a more elaborate process.  *Id*.

For the reasons hereinafter set forth, the Court will dismiss plaintiffs' allegations regarding a *de facto* revision, improper "substantial amendments," and improper road closures

for failure to exhaust administrative remedies. Additionally, the Court will dismiss plaintiffs' allegations regarding the Forest Service's failure to undertake the fifteen year revision for failure to state a claim.

### i. Failure to Exhaust Administrative Remedies

"Where Congress specifically mandates, exhaustion is required." *McCarty v. Madigan*, 503 U.S. 140, 144 (1992). Accordingly, "statutory exhaustion requirements are mandatory, and the courts are not free to dispense with them." *Bastek v. FCIC*, 145 F.3d 90, 94 (2d Cir. 1998). Applicable here, the U.S.D.A. Reorganization Act provides: "a person shall exhaust all administrative appeal procedures established by the Secretary or required by law before a person may bring an action in a court of competent jurisdiction against (1) the Secretary; (2) the Department; or (3) an agency, office, officer, or employee of the Department." 7 U.S.C. § 6912(e). The Second Circuit considered § 6912(e) and concluded, "[i]t is hard to imagine more direct and explicit language requiring that a plaintiff suing the Department of Agriculture, its agencies, or employees, must first turn to any administrative avenues before beginning a lawsuit." *Bastek*, 145 F.3d at 94-95 (quoting *Gleichman v. U.S. Dep't of Agric.*, 896 F.Supp. 42, 44 (D. Me. 1995)). This Court agrees.

The applicable procedure for pursuing administrative remedies in effect when plaintiffs commenced this litigation, 36 C.F.R § 217.8 (2000), provided that a challenging party must:

> (1) File a written notice of appeal, in duplicate, with the next higher line officer in accordance with the provisions of Sec. 217.9 of this part. (2) File the notice of appeal within 45 days of the date specified in the published legal notice for non-significant amendments to land and resource management plans documented in a Decision Notice or Record of Decision. (3) File the notice of appeal within 90 days of the date specified in the published legal notice for land and resource management

>plan approvals, significant amendments, or revisions, and for other programmatic decisions documented in a Record of Decision.

36 C.F.R. § 217.8 (2000). Plaintiffs recognize the statutory command to exhaust administrative remedies, but submit that there is "no procedure established by the Secretary for appealing multiple decisions taken over time which *taken together* are alleged to violate the NFMA," and the futility doctrine therefore rescues their claim from dismissal. Opp'n. 29-30. Defendants counter that plaintiffs have not met the burden the futility doctrine requires and, accordingly, their attempt to sidestep the consequences of their failure to exhaust fails. Defendants are correct.

Stated simply, plaintiffs allege that the series of amendments ebbed ever closer towards a *de facto* revision with each successive amendment. With the issuance of Amendment 21 on January 14, 1999, the Off Highway Vehicle ("OHV") Amendment on January 21, 2001,[4] or some point in between, all of the amendments taken together morphed from a mere series of amendments into a *de facto* revision and the NFMA violation sprang to life. However, plaintiffs assert that the existence of a *de facto* revision "may not be readily apparent until actions are taken under [that particular amendment] or even more amendments are made." Opp'n. 31. Because, plaintiffs argue, the 45 and 90 day windows for regulatory challenge do not provide sufficient time for one to know whether a particular amendment has tipped the scale towards *de facto*

---

[4]It is not clear whether the *de facto* revision occurred with the adoption of Amendment 21, or the OHV Amendment. Plaintiffs' Opposition states: "[i]t was not until all amendments through Amendment 21 and the Off Highway Vehicle ("OHV") amendments . . . had been adopted that the *de facto* revision could be said to be complete enough to trigger the statute of limitations. The same can be said for Movants' claims that plaintiffs failed to exhaust administrative remedies." Opp'n. 27.

revision, Section 217 does not contemplate an attack that alleges the cumulative effect of a series of amendments amounts to a *de facto* revision.  Therefore, plaintiffs continue, it would have been futile for plaintiffs to comply with the U.S.D.A. Reorganization Act and exhaust their administrative remedies before seeking relief in federal court.[5]

Plaintiffs argument is unavailing and fails to meet the futility doctrine's strict burden.  For the doctrine to apply, "[i]t must appear that pursuing available administrative remedies would have been 'clearly useless,' [and] that the ultimate denial of relief was a 'certainty.'" *Marine Mammal Conservation, Inc. v. Dep't of Agric.*, 134 F.3d 409, 413 (D.C. Cir. 1998) (quoting *UDC Chairs Chapter, Am. Ass'n of Univ. Professors v. Bd. of Trustees*, 56 F.3d 1469, 1476 (D.C. Cir. 1995)).

It cannot be said that plaintiffs' pursuit of administrative remedies would have been "clearly useless," or that plaintiffs would have been denied relief with "certainty."  By the regulation's terms, plaintiffs had either 45 or 90 days to file a notice of appeal from the date specified in the public legal notice, depending on whether they chose to challenge the amendments as advertised – i.e., non-significant – or as they alleged them to be – i.e., a *de facto* revision masquerading as a mere series of non-significant amendments.  They did neither.  Instead, they chose to wait until June 10, 2003, to file for relief in federal court.  Then, faced with the statute of limitations and exhaustion of remedies defenses, plaintiffs argued for the first time

---

[5]The plaintiffs' argument reminds the Court of the parable of the frog and a boiling pot of water.  Placed in hot water, the story goes, the frog immediately leaps from the pot in protest.  But placed in cool water that is heated one degree at a time, he remains in the pot until – sadly – it is too late and the poor fellow is cooked.  Here, the addition of each amendment ratcheted up the forest plan's offensiveness quotient one more click.  Before one knows the violation occurred, the administrative appeal procedures have lapsed and their appeal is dead in the water.

that one "may not know" a violation has occurred until actions are taken under that particular amendment or even more amendments are made. Opp'n. 31. There are several problems with this argument that plaintiffs cannot overcome.

First, accepting as true that one "may not know" a particular amendment has tipped the scale until actions are taken under it, plaintiffs do not allege in either their Complaint or Opposition that they, in fact, did not know a violation had occurred until after the 45 and 90 day windows expired. While such a doubtful scenario[6] may ensnare some hypothetical party in some hypothetical, attenuated set of circumstances, plaintiffs have not alleged that they are, in fact, a party so situated. To show that it would have been clearly useless or the outcome certainly determined and therefore excuse their failure to exhaust administrative remedies, plaintiffs must do more than allege that it would be futile for a hypothetical party in some hypothetical set of circumstances to seek administrative remedies, they must show that it was futile to *this* party to seek administrative remedies. They fail to do so.

Second, the regulation simply does not preclude an attack on a series of amendments as plaintiffs maintain. Plaintiffs state:

> [Section 217 does] not allow a reviewing officer to review past amendments in the light of the most recent actions or for an affected party to even request review of past actions in the light of current actions. Therefore, no appeal process exists which is designed to give a party an opportunity to appeal a series of decisions in the light of later actions.

Opp'n. 31. Contrary to plaintiffs' assertion, nothing in the regulation itself precludes plaintiffs from challenging that offending amendment in light of the previous amendments as they attempt

---

[6]The actions to be taken under the plan are first described in the published proposal.

to do here. The regulation provides an avenue to appeal the amendments and indicates nothing as to what the grounds for the appeal may or may not be. As defendants point out, "[t]he appeal rules permit challenges to non-significant forest plan amendments, and do not impose limitations on the subject matter of those appeals."[7] Reply 6. This Court need not opine on whether the agency would have accepted plaintiffs' argument(s). What is critically important is that this Court cannot say that such an attempt would have been clearly useless or the outcome certainly determined as the futility doctrine requires. Because plaintiffs have not satisfied their burden that seeking administrative remedies would have been futile, their failure to exhaust administrative remedies is not excused and their allegation with respect to the *de facto* revision is therefore dismissed for lack of subject matter jurisdiction.

Plaintiffs also allege in Claim One that the Forest Service evaded the Forest Plan amendment and revision processes by making "substantial changes" to the Flathead National Forest Plan without proper procedure, and by closing certain roads that "are required to ensure that adequate protection and care of the Forest can proceed." Compl. ¶ 50. Like plaintiffs allegation regarding the *de facto* revision, Plaintiffs were statutorily required to challenge these actions administratively before seeking relief in federal court. For the same reasons discussed above, the futility doctrine does not save plaintiffs from the consequences of their failure to exhaust. Accordingly, the Court will dismiss these alleged violations of the NFMA for failure to

---

[7]Defendants note that a similar challenge was raised in an administrative appeal under the Forest Service appeal rules. *See Native Ecosystems Council v. Dombeck*, 304 F.3d 886, 898-99 (9th Cir. 2002). As defendants correctly state, "the case demonstrates that there is nothing within the Forest Service's appeal rules that would preclude consideration of the type of issues Plaintiffs raise in their Complaint." Reply 6-7. The existence of this case, alone, dismantles plaintiffs' futility argument.

exhaust administrative remedies as well.

### ii. Failure to State a Claim

Where the movant bases the motion on a failure to state a claim upon which relief can be granted, the Court may dismiss based on dispositive issues of law. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). Plaintiffs allege under Claim One that defendants failed to undertake the fifteen year revision of the Forest Plan as required by NFMA.[8] Compl. ¶ 50. Beginning with Pub. L. 107-63, § 327 (effective through October 1, 2002), however, Congress repeatedly passed legislation extending the fifteen year statutory deadline. In 2007, Congress extended the deadline through October 1, 2008. The statute reads:

> Prior to October 1, 2008, the Secretary of Agriculture shall not be considered to be in violation of subparagraph 6(f)(5)(A) of the Forest and Rangeland Renewable Resources Planning Act of 1974 (16 U.S.C. 1604(f)(5)(A)) solely because more than 15 years have passed without revision of the plan for a unit of the National Forest System. Nothing in this section exempts the Secretary from any other requirement of the Forest and Rangeland Renewable Resources Planning Act (16 U.S.C. 1600 et seq.) or any other law: Provided, That if the Secretary is not acting expeditiously and in good faith, within the funding available, to revise a plan for a unit of the National Forest System, this section shall be void with respect to such plan and a court of proper jurisdiction may order completion of the plan on an accelerated basis.

Pub. L. 110-161, Title IV, § 410, Dec. 26, 2007, 121 Stat. 1844 ("2008 Consolidated Appropriations Act"). Accordingly, the Forest Service's failure to revise the plan is saved by the statutory safe harbor unless plaintiffs can show defendants are not acting expeditiously and in good faith. Plaintiffs have made no such showing.

---

[8] 16 U.S.C. § 1604(f)(5)(A) reads: "[The Forest Plan shall be revised] from time to time when the Secretary finds conditions in a unit have significantly changed, but at least every fifteen years."

As defendants make clear, the forest plan revision is well underway. Mot. 24. Indeed, at the hearing on plaintiffs' Motion for Preliminary Injunction, Judge Roberts found defendants had failed to make a sufficient showing that defendants were not acting with reasonable expedition. Tr. at 62 (Hearing, August 16, 2004).[9] The Court is aware that defendants changed their prediction for completion of the revision from the spring of 2006 until the fall of 2007,[10] but finds defendants' explanation reasonable.[11]   Because plaintiffs have not shown defendants are not acting "expeditiously and in good faith," they have failed to state a claim and the Court will dismiss this alleged violation of the NFMA accordingly.

**B.    Claim Two: Violation of Administrative Procedures Act ("APA")**

Agency actions may be judicially reviewed under the APA and set aside if they are arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. 5. U.S.C. § 706(2)(A). Judicial review of agency action may be reviewed only where: (a) the agency has taken final action; or (b) in limited circumstances, where the agency failed to act and such action

---

[9] Judge Roberts found: "[w]ith respect to expedition, the Forest Service has presented a plan for revising the plan that was adopted such that the draft revised plan is due by the spring of 2005 with the hope and target that the final plan revised [sic] will be coming in approximately a year after that. I don't find that that is a sufficient showing of the secretary's not acting with reasonable expedition."

[10] At oral argument defendants submitted to the Court that the Agency altered the rules governing plan revisions and, as a result, defendants extended their prediction for completion.

[11] Moreover, defendants are currently undertaking the public participation processes required for plan revisions. Because these processes, *e.g.*, public comment, are subject to specific time periods, even if the Court were to find the Forest Service is not acting in good faith or expeditiously the Court could not order the Forest Service to move any more quickly than they are currently. The only relief the Court could offer, therefore, would be an order setting a timetable for completion by the fall of 2008, which is consistent with the current prediction.

was both statutorily mandated and non-discretionary. *See Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 61-64 (2004). Plaintiffs allege defendants violated the APA by failing "to take action to revise the Forest Plan within the 15-year time set by statute" and because such failure "was based on such considerations as whether they might be sued, their own personal preferences as to the uses they preferred to be made to Forest lands, and political considerations rather than the considerations *mandated* by law and professional scientific standards." Compl. ¶¶ 55-56.

Though styled as a violation of the APA rather than the NFMA, Claim Two attacks the same alleged "failure" to revise the plan as above – the failure to revise the plan within fifteen years – and will be dismissed for the same reasons. Congress made clear that the Forest Service shall not be found in violation of the fifteen year statutory deadline absent a showing that the Forest Service is not acting expeditiously and in good faith. 2008 Consolidated Appropriations Act. As discussed above, plaintiffs have demonstrated neither. Accordingly, the Court will dismiss Claim Two for failure to state a claim.

**C.     Claim Three: Violation of FLPMA, R.S. 2477**

The Mining Law of 1866 provided, "the right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted." Act of July 26, 1866, ch. 262, § 8, 14 Stat. 251, codified at R.S. 2477, recodified at 43 U.S.C. § 932. The Federal Land Policy Management Act (FLPMA) repealed R.S. 2477 on October 21, 1976, but expressly preserved any valid, existing rights of way. FLPMA § 701(a), 43 U.S.C. § 1701. Plaintiffs allege defendants "have closed roads, and threaten to close other roads which were created under R.S. 2477 and

which Defendants lack the authority to close." Compl. ¶ 60. Defendants answer that plaintiffs "implicitly contend that title to the roads belongs to the public rather than the Forest Service." Mot. 27. And, because the Supreme Court held that the Quiet Title Act ("QTA") provides the exclusive means by which a party may challenge the United States' title to real property, *Block v. North Dakota*, 461 U.S. 273, 286 (1983), defendants contend this claim is properly brought only under the QTA – which plaintiffs failed to do – and this Court must therefore dismiss for want of subject matter jurisdiction. Mot. 27. Defendants are correct.

Plaintiffs argue that R.S. 2477 was an offer of dedication of easements across "unreserved, unappropriated federal lands" that could be accepted in either of two ways: "(a) by a positive act of appropriate officials manifesting a clear intent to accept the grant; or (b) by public use for such a period of time and in such a manner as to prove that the grant has been accepted." Compl. ¶ 35. The FLPMA repealed R.S. 2477 but expressly preserved any valid, then existing rights. The complained of closures are roads where a public right of way was created by public use pursuant to R.S. 2477 prior to 1976, and therefore remains intact due to the saving clause of the FLPMA. Therefore, plaintiffs argue, the Forest Service was and is without authority to close the roads. Faced with the exclusivity of the QTA, plaintiffs argue (a) their claim is properly viewed as a taking under the Fifth Amendment and (b) they are not bound by the QTA because they sued defendants for *ultra vires* actions. In addition, plaintiffs submit that the QTA specifically exempts claims such as theirs because the QTA "does not apply to or affect" cases "which may or could have" been brought pursuant to 28 U.S.C. § 1346, *inter alia*. 28 U.S.C. § 2409a. Section 1346 provides concurrent jurisdiction between U.S. District Courts and the Court of Federal Claims over "any other civil action or claim against the United States founded either

upon the Constitution, or any act of Congress, or any regulation of any executive department." *Id*. Accordingly, plaintiffs argue, because their claim is founded both on the Constitution and regulation, the exception applies.

The relevant case law supports defendants' position. The Seventh Circuit considered a similar attempt to sidestep the QTA in *Shawnee Trail Conservancy v. United States Department of Agriculture*, 222 F.3d 383 (2000). The plaintiffs in *Shawnee* did not claim the easements or rights of way were perfected under R.S. 2477. *Id*. However, the Seventh Circuit's analysis remains applicable because those plaintiffs claimed both private and public easements that predated the creation of the Shawnee National Forest and they claimed, as here, the Forest Service therefore lacked authority to close certain roads. *Id*. at 386. There, as here, plaintiffs attempted to structure their claim "as a constitutional challenge to the federal governments' regulatory authority and not to its title." *Id*. The district court found the argument unpersuasive and dismissed their claim for lack of subject matter jurisdiction, citing the Supreme Court's declaration in *Block* that the QTA provides the exclusive avenue to challenge the United States' title to real property. *Id*. Despite the fact that the plaintiffs in *Shawnee* did not seek to quiet title in themselves and were therefore not adverse claimants, the circuit court affirmed and noted, "[t]o allow claimants to avoid the QTA by characterizing their complaint as a challenge to the federal government's regulatory authority would be to allow parties to seek a legal determination of disputed title without being subject to the limitations placed on such challenges." *Id*. at 388. Similarly, in *Kinscherff v. United States*, 586 F.2d 159 (10th Cir. 1978), plaintiffs sought to establish their right to use a public road purportedly created by operation of R.S. 2477. The Tenth Circuit held that real property interest created by operation of R.S. 2477, "[i]f it exists, [] is

vested in the public generally" and "[m]embers of the public as such do not have a 'title' in public roads. To hold otherwise would signify some degree of ownership as an easement." *Id*. at 160. Finally, as defendants note, a similar attempt to use a *ultra vires* claim to avoid the QTA was rejected by the Ninth Circuit. *Alaska v. Babbitt*, 75 F.3d 449, 452 (9th Cir. 1995) (finding that the Supreme Court's *Block* decision precluded such an attack).

The Supreme Court made abundantly clear in *Block* that the QTA provides the exclusive means to challenge the United States' title to real property, and despite their attempt to characterize it otherwise, plaintiffs here seek to challenge the United States' title to real property outside the QTA and its strictures. Accordingly, the Court will dismiss Claim Three for lack of subject matter jurisdiction.

**D.      Claim Four: Violation of The Small Business Regulatory Enforcement Fairness Act 5 U.S.C. § 801.**

The SBREFA requires federal agencies to submit a report of proposed rules to each House of Congress and the GAO before they may become effective. A major rule may not become effective until 60 days after it is submitted to Congress or published in the Federal Register. Plaintiffs allege that the Forest Service failed to submit their management plans and related matters to Congress as mandated by 5 U.S.C. § 801(a)(1)(A), and therefore seek a declaration that they are *void ab initio*. Compl. ¶ 64-65. Defendants move the Court to dismiss this claim for lack of subject matter jurisdiction because 5 U.S.C. § 805 provides that "[n]o determination, finding, action or omission under this chapter shall be subject to judicial review." Defendants are correct and the Court will dismiss Claim Four accordingly.

There is limited case law interpreting Section 805, but what is available supports the plain

reading of the statute. *See Texas Sav. & Comty. Bankers Ass'n v. Fed. Housing Fin. Bd.*, No. A 97 CA 421 SS, 1998 WL 842181 (W.D. Tex. June 25, 1998) (rejecting plaintiffs' allegation that FHFB's failure to submit new rules to Congress violated SBREFA and holding "the language [805] could not be plainer" and "the statute provides for no judicial review of any 'determination, finding, action, or omission *under this chapter*"), *aff'd*, 201 F.3d 551 (5th Cir. Jan. 20, 2000); *United States v. American Elect. Power Serv.*, 218 F. Supp. 2d 931 (S.D. Ohio 2002) (holding that "the language of § 805 is plain" and that an agency's failure to submit a rule to Congress is not judicially reviewable); *In re Operation of the Missouri River System Litigation,* 363 F. Supp. 2d 1145, 1173 (D. Minn. 2004) (holding that section 805 precluded judicial review of the U.S. Fish and Wildlife's decision that the designation of certain critical habitat was not a major rule)*, vacated in part on other grounds*, 421 F.3d 618 (8th Cir. 2005).

Plaintiffs argue that if the Court were to interpret Section 805 to preclude judicial review, such a holding would impliedly repeal the grant of judicial authority under the APA to declare whether certain regulations are effective and in accordance with law. Opp'n. 40. And, because an implied repeal cannot be found absent a clear and manifest intent to repeal the other provision, *Calloway v. District of Columbia,* 216 F.3d 1, 10 (D.C. Cir. 2000), plaintiffs argue this Court must interpret Section 805 in a manner that does not require such an implied repeal. Opp'n. 40-41. Plaintiffs are unpersuasive. Section 805 unambiguously states that "no determination, finding, action, or omission under this chapter shall be subject to judicial review." The 'chapter' to which this provision refers is Chapter 8. Chapter 8 is the SBREFA. The SBREFA was added to Title 5 by the Contract With America Advancement Act of 1996. Pub. L. No. 104-121. As defendants appropriately state: "There is no logical means to reach a determination on Forest

Service compliance with SBREFA without running afoul of the Congressional bar on judicial review." Mot. 32. This Court, therefore, is statutorily barred from reviewing defendants' alleged failure to submit their management plans and related matters to Congress and for that reason will dismiss Claim Four for lack of subject matter jurisdiction.

For all of the foregoing reasons, the Court will **GRANT** defendants' Fed. R. Civ. P. 12(c) Motion. An appropriate Order accompanies this memorandum opinion.

March 31, 2008                                         /s/ *Thomas F. Hogan*
                                                         Thomas F. Hogan
                                                         Chief Judge